### CASSIDY *v.* BROOKLYN DAILY EAGLE.

*(Supreme Court, General Term, First Department. May 13, 1892.)*

1. LIBEL—NEWSPAPER PUBLICATION—PRIVILEGE.
    Defendant, the owner of a newspaper in which had been published an article about plaintiff, purporting to be the answer of one R. in a controversy carried on between him and plaintiff in the columns of the paper, six weeks after such publication, and after the controversy had seemingly ceased, published an article stating, as coming from R., that R. did not deny having described plaintiff as a bigger rascal than another person named; that he did so describe him, and stood by it, etc. *Held,* that the previous controversy did not extend to the last publication, and render it privileged.

2. SAME—PLEADING—EVIDENCE.
    In an action against the owner of a newspaper for libel in publishing an article stating, as coming from a person named, that such person does not deny having described plaintiff as a bigger rascal than one M., and that he reiterates the charge, plaintiff may introduce in evidence defendant's prior publications as to M.'s character, though such other publications are not pleaded, since the publication pleaded is libelous *per se,* and the other publications, not being extrinsic facts necessary to prove it libelous, but merely evidence to explain its meaning and to show defendant's knowledge of such meaning, need not have been pleaded.

Appeal from circuit court, New York county.

Action by Patrick S. Cassidy against the Brooklyn Daily Eagle for libel. From a judgment entered on a verdict for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN and ANDREWS, JJ.

*Bergen & Dykman,* for appellant. *J. O'Byrne, (Edwin R. Leavitt* and *Charles W. Brooke,* of counsel,) for respondent.

O'BRIEN, J. The complaint set forth three causes of action, for three distinct libelous publications. The first appeared in defendant's paper on May 30, 1887; the second on June 4, 1887; and the third on July 16, 1887. Upon the two first causes of action the defendant had a verdict in its favor, and upon the third, the plaintiff; and it is from the judgment entered upon the latter that the defendant takes this appeal. Although the prior publications are not here involved, it is proper to notice that they appear to have grown out of a controversy carried on in the columns of the defendant's paper between the plaintiff and one O'Donovan Rossa. The latter, having answered, in the second publication complained of, what he regarded to be an attack made upon him by the plaintiff, had seemingly closed the controversy, up to which point the defendant's course in publishing the articles has been justified by the verdict of the jury. But six weeks after the controversy had so ended, and without any intervening action upon the part of the plaintiff to incite the attack, there appeared in the defendant's paper the third publication, for which a recovery in this action was had. The article was as follows:

"TIMELY TALK.

*"O'Donovan Rossa not in a Retractive Mood.*

"*O'Donovan Rossa.*—I have not denied that I have described Patrick Sarsfield Cassidy as being as big a rascal as Red Jim McDermott. I did say such a thing, and I stand by it. I have reason to think that this Cassidy is as big a rascal as Red Jim McDermott, and a bigger rascal."

Upon the trial, as the result of the controversy alluded to, the defendant claimed that this publication, in addition to the former ones, was privileged;

but, upon evidence which justified submission of this question to the jury, the defendant's position was not sustained. There are brought up for review, however, two questions,—one in regard to the refusal of the trial judge to charge the following proposition: "That the jury may consider the circumstances which your honor said they might consider with reference to the third cause of action. If they give sufficient weight to what had preceded in this newspaper controversy, that they may award for the third cause of action six cents damages." An exception was taken to such refusal, and, upon the motion for new trial, this was referred to as one of the principal grounds upon which it should have been granted. This request is by no means clear, and, in the absence of evidence from the record as to justification, privilege, or any mitigating circumstances relating to this third libel charged in the complaint, —which, if given upon the trial, has not been printed,—necessarily leaves what was meant by the request in doubt, and does not present the question in such a form as to be properly passed upon. We will assume, however, (which is its probable meaning,) that it was intended to ask of the court that the newspaper controversy should be extended to the third libelous article, published after that controversy had ceased. Had such a definite request been made the court should have refused it. We do not think that such a privilege could be extended to the third article, which, after the close of the controversy, and in the absence of any explanation or extenuation, seems to have been purely gratuitous.

The second question raised upon this appeal is based upon exceptions taken to the admissibility in evidence of certain publications of the defendant, which were admitted for the purpose of showing the kind of rascal McDermott was. It is contended that such evidence, being offered to support extrinsic facts, was not admissible, because not pleaded. We think, however, that the appellant overlooks, with regard to when extrinsic facts may be admitted, the distinction between publications which are libelous *per se* and those which become libelous only upon proof showing by extrinsic facts that the publications are libelous. In other words, where a publication is not defamatory on its face, and becomes so only by reference to extrinsic facts, the existence of those facts must be alleged. Where, however, as here, the article was libelous *per se,* no rule of pleading required that evidence of the extrinsic facts showing its defamatory character should be pleaded. This distinction as to the rules governing a pleading is based upon the requirement that all necessary facts to make out a cause of action must be stated, but this does not involve a requirement that a pleading which sets forth a good cause of action should also contain the evidence required to support it. The libel complained of stated that the respondent was not only a rascal, but "a bigger rascal" than one Jim McDermott. As stated by the learned trial judge, the natural force of the expression is that McDermott is a rascal, and that this man is a greater rascal than that rascal; and the kind of rascal he is, they have disclosed in the paper. If defendant had not had knowledge of McDermott's character,—if the evidence to establish the same had not been taken from the defendant's own paper,—there might be some force in the suggestion that a comparison between a rascal and such a rascal as McDermott was claimed to be could not be shown, in the absence of any averment in the complaint, or knowledge of McDermott's character brought home to the defendant. Where, however, as here, the defendant had published in its own prior issues facts showing how big a rascal McDermott was, it would seemingly to us be extending beyond what is required by rules relating to pleading to compel the setting forth of such published particulars. The defendant cannot claim to have been either injured or surprised by such evidence; for the standard of comparison was its own, published by itself prior to the alleged libel, and the evidence shows that the editor through whom the article complained of was inserted had read in its issues the record of McDermott

as published.   Had the charge here been that plaintiff was a bank thief or a sneak thief, could it be claimed that evidence to show what was meant by "bank" or "sneak" must be set forth in the pleadings to justify evidence being given as to the meaning of such words?   We do not think that the rule applied to publications which are not defamatory on their face, and become so only by reference to extrinsic facts, which for this reason must be averred, can be applied to evidence which explains the meaning of language in a charge made, which is libelous *per se*.   We are of opinion, therefore, that it was not error to admit in evidence defendant's prior publications of McDermott's character, for the purpose of explaining the meaning of the publication, or the knowledge which defendant had of such meaning at the time the libel complained of was published.   We think, therefore, that the judgment and order appealed from should be affirmed, with costs.   All concur.